**BENJAMIN HAILE, OSB #04066**
ben@portlandlawcollective.com
**KENNETH A. KREUSCHER, OSB #066189**
kenneth@portlandlawcollective.com
Portland Law Collective LLP
1130 SW Morrison St., Suite 407
Portland, OR 97205
Tel: 503-228-1889
Fax: 503-223-4518
Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| ELIZABETH EVON NICHOLS,<br><br>    Plaintiff,<br><br>  vs.<br><br>CITY OF PORTLAND, JEFFREY MCDANIEL AND DORIS PAISLEY,<br><br>    Defendants. | Case No.: 3:12-cv-1889-MO<br><br>AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS |

1.      **Elizabeth Nichols, Estimated Length of Testimony 1.5 hours.**

   **Contact Information:** Ms. Nichols can be contacted through her attorneys at the Portland Law Collective.

   Ms. Nichols went to high school in Mountain Home, AR. She obtained her GED in August 2010. She came to Portland and became involved in the Occupy Portland movement. She has been a student at Portland State University since April 2011.

   She was escorted out of Chase Bank with other protesters and passed along a line of police officers that were lined up across Yamhill Street. Police didn't tell her to cross

Page 1 -  AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

the street, they just kept handing her off to the next officer until she was across the street. There were about 600-1000 present at the protest.

In the video, she is wearing a black leather jacket and a white bandanna.

She realized that she needed to get her backpack and computer from somebody on the other side of the street. She saw a friend across the street so she went back to the south side of Yamhill Street. She was not able to retrieve her backpack that day. She asked an officer, who she later learned was Officer Posey, if she could go through a line of police officers to find her friend with her bag. He told her she would have to go around the block instead.

Officers arrested people inside the bank, but they brought them out of the bank through a different doorway, not the doorway on Yamhill Street.

A sound truck started giving an order repeatedly to clear the street. The officers on the sidewalk started pushing the crowd east on the sidewalk. They did not give any instructions. In the video she can hear officers saying "move". But she didn't hear it that day. She would have heard commands if they were directed directly at her.

The crowd behind her prevented her from moving back. There were so many people behind her that she felt like she couldn't move. Because the sound truck was telling people to clear the street and the police were pushing the crowd toward the corner, it seemed like there was nowhere for them to go. She pulled the bandanna over her face when she realized that police and news reporters were making video. She has always been uncomfortable with being video recorded. She had been pushed up against a metallic colored box. The officer she later learned was Posey pushed her away from the box with his shoulder. She didn't see anything thrown at the police. She saw police

Page 2 -  AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

jabbing people in the ribs with their batons. She linked arms with the people to her left and right. She linked her left arm with a man who was facing in the opposite direction. She linked her right arm with Laura Seeton.

Paisley shoved her baton against Nichols' throat. The baton went up under her chin. It tilted her head back and partially cut off her breathing. Nichols tried to move the baton away from her neck. She did not move toward Paisley. She did not try to touch Paisley. Nichols pulled the bandanna down to yell at Paisley. She started to yell, "That's no way to treat somebody."

Before she could finish, a blast of pepper spray hit her in the face. It went into her eyes, nose, mouth, and down her throat. Her mouth was open at the time because she was shouting at Officer Paisley. She was overcome with pain. She couldn't see. Her legs gave out. She collapsed or sat on the sidewalk. She tried to fall as carefully as possible. She could hear people around her screaming for a medic. All of a sudden an officer who she now knows was Officer Paisley grabbed her by the hair and pulled her through the police line and towards the bank.

A police officer pulled her a second time by her hair, then lifted her to her feet. She was screaming that her face was burning from pepper spray. She recalls police officers saying 'shhh, the babies are sleeping', or something like that. They put flex cuffs on her. After she complained for a good five minutes about her eyes burning, Sergeant Anderson took her outside poured three bottles of water onto her face. He poured water down her throat too because she told him there was pepper spray in her throat. After that she still couldn't see but it didn't hurt nearly as bad and she could breathe and talk easier. When they brought her back in she kept telling them, "I have eczema, it's a serious skin

Page 3 - AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

condition, the spray is going to make it flair up." No matter what she said or how many times she said it they wouldn't give her any medical treatment.

Ms. Nichols does not enjoy being placed in the spotlight. The publicity surrounding being pepper sprayed, the Oregonian photograph, and being questioned about the incident numerous times by friends, family, acquaintances, and investigators have been unpleasant for her. She gave testimony to investigator Michael Barclay on July 27, 2012. She gave testimony about the incident in a trial on December 11, 2012.

The excessive force used by Officer Paisley was very upsetting to her when it happened. After that, it contributed to the overall sense of being treated inappropriately on November 17, 2011 that the bad feelings that came out of the experience. It was not, however, as much of a focus of nightmares, flashbacks, discomfort, depression, and other negative feelings as being pepper sprayed by Sgt. McDaniel.

Ms. Nichols began to suffer from depression and bad feelings about two weeks after being pepper sprayed. This continued to varying degrees through 2012. She will describe these feelings.

Nichols has had eczema since she was born. She has always had eczema on her legs and in the curve of her elbows, and on rare occasions on her hands. Before being pepper sprayed, she never had it on her upper body.

She will testify about the information in her medical records from Outside In, which will be offered as an exhibit. She went to a doctor at Outside In on 11/13/11 because her eczema was worse than usual. She went again on 12/11/11 and reported to the doctor that she had developed dry, scaling skin on her upper arms, chest and neck. These appeared in mid-November, a few days after she was intensely sprayed with

Page 4 -   AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

pepper spray. They have been very itchy and bothersome. They are now beginning to fade.

On 1/1/12 she went to the doctor at Outside In for depression. The depression was more intense than it had ever been in the past. She reported that she had started to cry a lot and felt negative feelings from having been pepper sprayed and she was suffering from nightmares. She doesn't normally have nightmares. In one nightmare she woke up, and while she was half awake she was still dreaming. She thought police officers were touching and grabbing at her. She reported feeling down and depressed, feeling badly about herself, having trouble concentrating nearly half the days. She reported trouble falling or staying asleep or sleeping too much and moving or speaking so slowly that other people could have noticed nearly every day. She said she had support from friends, and refused medication. She didn't want counseling because it was a new clinic to her and she didn't want to talk to somebody that barely knew her. She showed the doctor that her eczema was improving, but she still had some on her neck and anterior chest wall.

On 1/29/13 she returned to the doctor at Outside In due to depression. She reported feeling depressed and having little interest in doing things nearly every day. She felt as if her depression was not better or worse than the previous visit, but it was a significant difference from her moods in the past. She didn't want to go out, or talk to anybody, or do anything. She cried more. She was not having nightmares anymore. Her eczema was back to her pre-pepper spray baseline, except that there were still patches of eczema on her neck for a while. She was also under some stress from applying to Portland State University and looking for a job.

Page 5 -  AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

When she went to the doctor on 3/25/12, she was feeling less depressed and more cheerful. Being in a relationship helped. Still, she reported occasional loss of interest in doing things, occasionally feeling down, trouble sleeping more than half the time, feeling tired or having little energy more than half the time, trouble concentrating on things more than half the time, and often moving or speaking so slowly that other people noticed.

When she went to the doctor on 4/29/12 her depression was getting worse. She reported feeling down, having little interest in doing things, feeling tired and having little energy, having trouble concentrating on things nearly every day. She reported moving or speaking so slowly that other people could have noticed more than half the days. After that, she tried to get counseling at Portland State University, but they declined her because she needed long term therapy. By that time she was very tired of talking about the pepper spray incident. People would ask stupid questions or make annoying comments. She was experiencing some stress from starting college classes.

On her first day of classes, the trauma of being pepper sprayed was triggered when an officer walked up to a friend she was with. He was a very nice, but the fact that he had a canister of pepper spray at his belt triggered her. Memories came flooding back into her head and she started crying. It was uncontrollable and bad. She was considering counseling again.

She is doing much better now, but bad memories of being subjected to excessive force by Officer Paisley and Sergeant McDaniel come up from time to time and cause her to feel badly.

//

//

2.  **Jeremy Graeber, Estimated Length of Testimony: .45 hour.**

**Contact Information:** 205 New Lend Avenue, Woonsocket, Rhode Island 02895; telephone 516-509-7523.

Mr. Graeber is a 28-year-old male, and a student who lived in Portland until late 2012. He is U.S. Veteran and worked with Occupy Portland as a "street medic" since Occupy began.

He will testify that he met Ms. Nichols through Occupy Portland. Both of them frequently worked at the park during the night time. They had no previous relationship and are not close friends now.

On November 17, 2011, Mr. Graeber was present during the incident at issue in this case. He was standing right below Oregonian photographer Mr. Randy Rasmussen who took the pepper-spray picture of Ms. Nichols and Mr. Graber had a direct line of sight to her.

Prior to her being pepper sprayed, Mr. Graeber saw Ms. Nichols' head snap back from being struck with a baton somewhere in or near the face by a short officer — whom he believed to be female — in riot gear. This action caught Mr. Graber's attention and he began to watch Ms. Nichols and the officer who struck her. He saw Ms. Nichols regain her balance and yell at the officer. He observed that Ms. Nichols did not try to strike the officer or get close the officer. Ms. Nichols was pepper sprayed directly into her mouth as she was yelling. There was only a 3-4 second gap between the baton strike and the pepper spray. Mr. Graeber put on a gas mask because he was concerned about pepper spray or tear gas. He looked back at Ms. Nichols, and she was already being dragged by her hair behind police lines.

Page 7 - AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

Mr. Graeber will explain that the crowd of demonstrators was receiving mixed messages or commands from the police both prior to and at the time Ms. Nichols was struck by the baton and pepper sprayed. The police were telling people to stay out of the street, but the police were also pushing demonstrators off of the sidewalk. Mr. Graeber will testify that there was nowhere for the crowd to go. There was no room to move anywhere. If a person tried to step forward to get out of the front area of the crowd then the police would grab them or hit them. Mr. Graeber will testify that there was no clear, obvious, or police-identified direction for the crowd to go in order to comply with the contrary police orders. Mr. Graeber heard the police sound truck giving orders. There was no "chemical weapons" or pepper spray warning.

Mr. Graeber did not see the demonstrators holding any weapons, such as "wooden planks with nails sticking out of them."

Mr. Graeber will testify that he was a bit surprised and disappointed by the police actions in clearing the sidewalk on Yamhill Street on November 17, 2011. Up until that date, it was his experience that the Portland Police Bureau and Occupy Portland activists had a "relatively friendly" relationship. On that date however, Mr. Graeber saw many officers from other towns and jurisdictions, and the police acted really aggressively.

3.  **James Tardy, Estimated Length of Testimony: .45 Hour**

    **Contact Information:** SW 4th and Main, Portland, Oregon 97204; telephone 503-432-0116.

    Mr. Tardy is a 45 year old man who is self-employed. He was active in Occupy Portland from the first day of the encampment.

    Mr. Tardy was present at demonstrations throughout downtown on November 17, 2011, and was present during the incidents at issue in this case. In general, Mr. Tardy

Page 8 - AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

will testify that overall throughout the course of the day the demonstrators were very well behaved; they were raising their voices and saying controversial things but were behaved.

On the afternoon of November 17, 2011, Mr. Tardy was headed north on 5th Avenue in downtown Portland. He looked to the left at the intersection of 5th and Yamhill and saw a bunch of cops in the street and a bunch of cops on the sidewalk. There was also a crowd of protestors in front of the bank and in Pioneer Square. He went towards the crowds and he saw that there were a few people in the street and the police were ordering people to "clear the street," which was all they would say.

People got out of the street and went back on to the sidewalk; some went to the north sidewalk and some protestors went to the south sidewalk. Mr. Tardy got out of the street as directed onto the south sidewalk. He stood in a tightly packed crowd of demonstrators to the east of the entrance to the Chase Bank.

Mr. Tardy will explain that the riot police began pushing the crowd east, hitting and poking people with their batons. He asked the officer in front of him what to do, and the officer responded that Mr. Tardy should "clear the street" while shoving him down the sidewalk. Similarly, there was the sound truck on Yamhill telling people that the street was being opened and to clear the street. The orders were confusing. Mr. Tardy will testify that he noted that he was not in the street; he was on the sidewalk. Mr. Tardy did not know what the police wanted him to be doing. He heard other demonstrators yell that they were confused, or that they were on the sidewalk.

The police continued to push Mr. Tardy and others in the crowd of demonstrators eastbound on the sidewalk towards the intersection of 6th and Yamhill. There were horse police units there. Looking around, Mr. Tardy saw that there were police (including

Page 9 - AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

mounted police) to the east, south, and west of the crowd. Mr. Tardy will testify that the police orders he heard at that time were again to "clear the streets." Mr. Tardy felt confused and felt that the atmosphere was chaotic. He and the vast majority of demonstrators (including Ms. Nichols) were on the sidewalk. The demonstrators that were in the street had mostly been pushed there by the police. He did not see demonstrators (including Ms. Nichols) fighting or struggling with the police.

He did not see the pepper spraying. After several minutes of being in a crowd pushed by the riot police, Mr. Tardy turned his back to the police line, because he saw an older male fall on his back. When he looked back to the west towards the police line, there was a vapor/mist hanging in the air. Mr. Tardy saw Ms. Nichols with her face painfully scrunched up and trying to grab her own face. Ms. Nichols fell to the ground, and a female police officer dragged her by the hair away from him behind the police line.

Several minutes later, Mr. Tardy observed Sgt. McDaniel pepper spray a line of demonstrators who were standing on the curb near Pioneer Square with a "mini-fire extinguisher looking pepper spray can." It appeared that those protestors were staying off of, or trying to step out of, the street.

Generally, Mr. Tardy was surprised and disappointed by the police actions on November 17, 2011. Prior to that day, he felt that the police were respectful and generally gave clear commands. That day was the first time during the Portland Occupy events that he felt confused and threatened by the police.

//

//

//

Page 10 -       AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

4.     Laura Seeton, Estimated Length of Testimony: .45 Hour.

**Contact Information:** 2201 NE 58th Ave.   Portland, Oregon 97213; Telephone 503-753-8892.

Ms. Seeton is a 32-year-old woman and a mother of three children. She is a resident of Portland, OR. She works as a dental treatment coordinator. She participated in Occupy Portland since the first day that it set up camp.

Ms. Seeton was present at demonstrations throughout downtown on November 17, 2011, and was present during the incidents at issue in this case. In general, she will testify that protestors had been happy and excited throughout the day.

Ms. Seeton was standing outside of Chase Bank with a number of other protestors to support protestors inside Chase who were going to be voluntarily arrested. She remembers backing up from the bank door on the sidewalk after other protestors had called to back away from the door to allow them to exit the bank. Without any warning, mounted officers charged into the crowd on horses, and protestors scrambled out of the way. Some of the protestors were pushed off of the sidewalk towards the street. There were also officers in the street pushing protestors towards the sidewalk without issuing warnings or clear demands. The police gave no clear direction to protestors at this point. The only directions or commands that Ms. Seeton remembers hearing were announcements from a police sound truck that people should get out of the street, quoting an "ORS," and stating that the streets were being opened to vehicles. Ms. Seeton did not see the protestors physically resist or struggle with the police, and the protestors around Ms. Seeton all appeared surprised by the aggressive police actions.

Ms. Seeton will testify that police began to push the demonstrators east bound on Yamhill Street towards Sixth Avenue. As she was pushed past a metal box, Ms. Nichols

Page 11 -     AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

locked her arm with Ms. Seeton's as the crowd was pushed. Ms. Seeton remembers feeling "really scared because we were getting pushed from all directions" by police. She was jabbed in the thigh by a police officer's baton around this time. She held her hands up with "peace signs" so that onlookers across the street could see her. Ms. Seeton remembers yelling that she was confused and that she was on the sidewalk. She felt that the police were trying to provoke her to enter the street so that they could arrest her or use greater force on her. The police sound truck continued to repeatedly announce that people needed to clear the street.

Ms. Seeton did not see Ms. Nichols get struck by a baton in the throat. She remembers that she was facing away from Ms. Nichols when Ms. Nichols was pushed backwards and let go of Ms. Seeton's arm. Ms. Nichols was pepper sprayed as Ms. Seeton began to turn back, and Ms. Seeton immediately felt soreness in her throat and pain in her face. Ms. Seeton saw Ms. Nichols spin around and fall to the ground in pain, gasping for breath.

Ms. Seeton will testify that she did not see Ms. Nichols act aggressively towards the police at any point. Ms. Seeton thought it was odd that Ms. Nichols was the one who was pepper sprayed because Ms. Nichols "is small and has such a soft voice."

Ms. Seeton will testify that there were more police officers at this protest than previous Occupy Portland protests. The riot gear worn by officers was intimidating and it made her "feel like I did not have the right to be there, to protest."

//

//

//

Page 12 -    AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

5.   Larry Andrews, Estimated Length of Testimony: .45 Hour

**Contact Information:** 2226 NW Hoyt Street, Apt. 35, Portland, Oregon 97210; telephone 503-222-5717.

Mr. Andrews is a 52-year-old man who works as an accountant. He is a resident of Portland, Oregon. Mr. Andrews supported Occupy Portland by going to a few demonstrations, including the November 17, 2011, demonstration.

Mr. Andrews was present at the locale of SW 6th Avenue and Yamhill Street during the incident at issue in this case. He recalls wearing a tan jacket with a white collar and a green hat on that day. He will testify that he can be seen standing near Ms. Nichols in the Oregonian photo of her being pepper sprayed, which is the plaintiff's exhibit 1.

On November 17, 2011, Mr. Andrews was one of many demonstrators outside the Chase Bank. He was inside the bank vestibule for about 10 minutes. Mr. Andrews will testify that for some time the atmosphere of the protest was pleasant and friendly. Someone was playing disco music, and people were dancing. He did not see the demonstrators doing anything to physically threaten the police, nor doing anything illegal other than occupying the vestibule to the bank where the ATM machines were located. He will state that the police had been fairly polite. He saw one officer inside the bank write a message and hold it up to the window of vestibule, asking them "do you want to get arrested?"

At that point, Mr. Andrews left without hearing any announcement that arrests would take place. He will testify that before the police arrived, he was peacefully standing on the sidewalk near the bank in protest with other demonstrators. When the

mounted police and police in riot gear arrived, the police were no longer polite, but they quickly became "self-contradictory and extremely rude."

The mounted police shouted at protestors to get off the sidewalk and pushed some of them into the street. At that point Mr. Andrews heard the police sound truck order the demonstrators off the street, so some of the demonstrators tried to move back onto the sidewalk. He will testify that when the demonstrators moved back to the sidewalk, the police began pushing the crowd east toward Sixth Avenue while jabbing them with their batons. He did not hear them give any clear commands at that time.

Mr. Andrews will testify that an officer (Officer Paisley) struck him in the back and in the rear neck/jaw area with her baton without warning.

He will testify that when he found himself in front of the police line, they began pepper spraying some of the people around him. He felt some of the pepper spray on his cheek and turned to his right to see a big cloud of it hitting Ms. Nichols in the face. She fell down, and Mr. Andrews will testify that he was shocked to see an officer directly grab her hair and drag her away. He will further state that he did not see her do anything provocative or threatening. After that Mr. Andrews and the other demonstrators were pushed into the street, and he eventually found himself in Pioneer Square where the police formed a line in the street facing the crowd for five or ten minutes and then left.

**6.     Lara Baskin, Estimated Length of Testimony: 30 minutes.**

**Contact Information:** 1640 SE 44th Avenue, Portland Oregon 97215; telephone 971-322-6903.

Ms. Baskin is a 21 year old woman who works in a toy store  She is a resident of Portland, Oregon.  She had been at the Occupy Portland camp since the first day and worked for a few weeks in the camp's kitchen and later worked in the First Aid Station.

Page 14 -     AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

On November 17th, 2011, Ms. Baskin was inside the bank vestibule at the time that Ms. Nichols was being hit and pepper sprayed by the police and did not see the altercation outside. She was arrested inside the bank and eventually was placed in the same arrest wagon as Ms. Nichols. She will also testify that the arrestees were brought out of the bank via the door on SW 6th Avenue.

She will testify that the police seemed to be particularly aggressive at the protest that day. At past protests, the police had just told protesters to get out of the street, but at this protest they were physically moving people out. Ms. Baskin will testify that she had been pushed down by a bicycle cop earlier in the day.

Ms. Baskin will explain that in the arrest wagon, Ms. Nichols appeared to be "in a lot of pain." She could not breathe or see anything and kept crying and wiping her eyes on Ms. Baskin's jacket. After they were booked at the precinct, Ms. Baskin was released and did not see what happened to Ms. Nichols after that.

7. **Adam Kohut, Estimated Length of Testimony: 1 Hour.**

**Contact Information:** 1219 SE Rhine Street, Portland, Oregon 97203; telephone 360-481-1042.

Mr. Kohut is employed at "Livin' Spoonful" in Portland, Oregon. He has a domestic partner and is a parent of a young child. He is a resident of Portland, Oregon.

Mr. Kohut will explain that on November 17th 2011, he went downtown to meet some friends from his union to join the Occupy Portland protests. He met them in Pioneer Square, and they went to the Wells Fargo building. Shortly thereafter he and his friends returned to Pioneer Square, because they had heard there were arrests being made inside Chase Bank. They wanted to see what was happening.

Mr. Kohut was standing on the sidewalk between the bank and Yamhill Street trying to observe the arrests being made inside when the police formed a line and began pushing the crowd east down Yamhill Street. He will testify that an officer jabbed him with his baton.

He did not hear the riot police giving any orders. The only orders he heard were coming from the police sound van that was threatening them with arrest if they did not clear the street. Mr. Kohut will further explain that the police "had formed a jam-up of people because the crowd on the sidewalk could not get into the street."

After the police pushed a group of protestors past a tree, Mr. Kohut will testify that he saw a female officer hitting people with her baton. He saw and heard Ms. Nichols shout at the police officer, asking her to stop shoving and hitting them with her baton. He never saw Ms. Nichols touch a police officer. He did not grab Ms. Nichols to hold her back. Mr. Kohut will testify that while he focused on the female officer, another officer shot pepper spray into the crowd. He saw Ms. Nichols fall to the ground. He tried to grab her to help her receive medical attention, but the police dragged her away.

He will testify that at the time Ms. Nichols was yelling and was pepper sprayed, he had no room to back up because the police were in front and to the right of him, and the crowd was dense behind him. He will testify that as a result even if the officers had ordered him to move he would not have been able to.

Mr. Kohut will state that he is one hundred percent sure that Ms. Nichols was not in the street; she was on the sidewalk with him. He will explain that if she had been in the street, he would have been as well, or he would have had to step over the curb when he tried to grab her, but he did not.

Page 16 -     AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

8.      **Carol Nichols - Estimated Length of Testimony: .5 hour.**[1]

Ms. Nichols is a resident of Mountain Home, Arkansas. She will testify by telephone. She is Plaintiff's mother.

She will testify about the history of Ms. Nichols' eczema. Ms. Nichols has had eczema all her life. A week after she was home, she broke out into an eczema rash all over. She was hospitalized once for eczema in 1993 for three days at the Baxter Medical Center in Mountain Home. Aside from that, her eczema was usually manageable with 1% cortisone cream.

Ms. Nichols will describe symptoms she observed over the telephone of her daughter's depression. When Plaintiff calls, she is much quieter and more withdrawn.

For rebuttal, she possibly will testify about her communications with her daughter during the period from November 2011 to May 2012. Her daughter said that her eczema had become unusually, and had spread to parts of her body where she had seldom or never had it before. Her daughter became depressed during this period. She will testify about her daughter's statements about emotional distress related to the use of force by defendants McDaniel and Paisley.

9.      **Sgt. Kristina Jones - Estimated Length of Testimony: 10 minutes.**[2]

Sgt. Jones was in the police loud-speaker truck on November 17, 2011. She will testify that dependent upon the location where the police were present, she made the following admonishment with the appropriate streets inserted:

---

[1] Plaintiff will file a motion asking the court for leave to add Ms. Nichols as a witness and for leave for her to testify via telephone.
[2] Plaintiff will file a motion asking the court for leave to add Sgt. Jones as a witness.

Page 17 -      AMENDED PLAINTIFF'S WITNESS LIST AND STATEMENTS

> "This is the Portland Police. Under authority of Oregon Law, (Streets inserted here) Street/Avenue is being reopened to vehicular traffic. You must immediately vacate the street and proceed to the sidewalk. If you remain in the street you are subject to arrest. You are now being ordered to vacate the street."

Sgt. Jones had a laminated copy of that admonishment and read off of it when giving directions throughout the day. She could tell that the loud speakers were working and protesters could hear the admonishments, because on several occasions the protesters were screaming back that they were not in the street, but that the police were in the street.

DATED, this 1st day of August, 2013.

                                            */s/ Kenneth A. Kreuscher*

                                            _____
                                            Kenneth A. Kreuscher
                                            Attorney for the Plaintiff